# First Claim: Denial of Exercise and Fresh Air.

Plaintiff's United States Constitutional Rights Violated
Fifth Amendment. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self Incrimination; Due Process of law; Just Compensation for Property.
No person shall be held to answer for a capital, or other wise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or Property, without due process of law; nor shall private Property be taken for public use, without just compensation.
Eighth Amendment. Excessive Bail, Fines, Punishments. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.
Fourteenth Amendment. Citizenship; Privileges And Immunities; Due Process; Equal Protection; Appointment of Representation; Disqualification of Officers; Public Debt; Enforcement.
Section 1. All persons born or naturalized in the United States and subject to the jurisdiction there of, are citizens of the United States and of the State wherein they reside.
No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or Property, without due process of law; nor deny to any person within its jurisdiction the equal Protection of the laws.

Defendants named in his/her Individual and Official Capacity: Derrick D. Schofield-Tennessee Department of Corrections Commissioner, James M. Holloway-West Tennessee State Penitentiary Warden, Robert Henry-West Tennessee State Penitentiary Associate Warden of Treatment, Stanley Dickerson-West Tennessee State Penitentiary Associate Warden of Security, Charles Sweat-West Tennessee State Penitentiary Chief of Security, Anthony Ragland-West Tennessee State Penitentiary Unit Manager, Jeffrey Middleton-West Tennessee State Penitentiary Captain/Acting Unit Manager, William Bryant-West Tennessee State Penitentiary Unit Manager, and Evelyn Scallions-West Tennessee State Penitentiary Counselor.

Upon my information and belief that between the dates of October 16th, 2014 up to January 6th, 2015 while I was being housed and assigned at the West Tennessee State Penitentiary pod #3B, the time was undetermined of how long I would be housed on 24 hours a day lockdown without the opportunity for receiving exercise and fresh air outside of my assigned cell.

Each of the prison officials mentioned throughout this complaint were deliberately indifference to my needs for some minimal amount of exercise and fresh air outside of my assigned cell during my incarceration in State Prison which is a liberty interest in movement outside of my assigned cell guaranteed by due process clause.

Even after I had notified each of the prison officials that I was having physical as well as mental health Problems from being locked inside a cell 24 hours a day my complaints and requests were still ignored.

Between the dates of October 16th 2014 up to January 6th, 2015 I verbally complained and requested exercise and fresh air,

Whenever the prison officials would enter the pod#3B, as well as mailed out as in house mail and privilege legal mail letters that I had personally hand written, and numerous amounts of inmate inquiry information request forms to the Prison officials but my complaints and request to receive exercise and fresh air outside of my assigned cell and my requests to be rehoused and assigned to another general population building were ignored.

For a total of 74 days consecutive I was deprived by the defendants of a basic human need.

Several other inmates during the time which were being housed on the pod#3B with me that were medium security custody level were immediately moved and continued to be rehoused in other building's while the defendants forced me to live on the pod#3B in segregation and solitary confinement status even after the defendants had been made aware that I had nothing to do with the incident which caused the pod#3B to be placed on lockdown and notified that the 15 days punitive segregation sentence had expired on October 31st, 2014 which had been activated on the day of the October 16th, 2014 lockdown.

By me being deprived of one (1) hour exercise and fresh air outside of my assigned cell I was forced to sign up on sick calls due to chronic pains and stiffness located in my back, neck, and spinning cord which I had no problems with until I was forced by the defendants to live inside a cell 24 hours a day other than for a 10 minutes shower every other day. I was also forced to request mental health assistance on several different occasions due to issues and problems I was dealing with on a daily basis by me being housed inside a cell 24 hours a day with different cellmates and no exercise or fresh

air outside of my assigned cell.

Inmates that had been proven by the prison officials to have been involved in the October 16th, 2014 incident which took place on the pod #3B at West Tennessee State Penitentiary as well as inmates that were proven by the prison officials not to be involved in the incident were rehoused after being found guilty or upon request and receiving the opportunities to exercise and fresh air outside of their assigned cells.

I was targeted by the defendants to be tortured, humiliated, degraded, and deprived of my rights to be free from cruel and unusual punishment, liberty, and due process of law.

Twice I filed grievance complaints with the West Tennessee State Penitentiary grievance system. Other avenues were also taken in order of receiving responses and exhausting all of my administrative remedies before filing this complaint.

Citing Tennessee Department of Corrections Policies:

1. Tennessee Department of Corrections Policy #506.16-1, Living Conditions for Segregated Inmates.
2. Tennessee Department of Corrections Policy #404.10, Administrative Segregation, Placement, and Release.
3. Tennessee Department of Corrections Policy #404.11, Mandatory Segregation.
4. Tennessee Department of Corrections Policy #506.26-1, Security Management Unit Operations.
5. Tennessee Department of Corrections Policy #506.14-1, Housing Assignments.
6. Also citing the December 15th, 2014 and March 1st, 2015 Tennessee Department of Corrections West Tennessee State Penitentiary site #2 Unit #3 Inmate Orientation Handbooks.

Personal Involvements:

1. Defendants James M. Holloway, Robert Henry, Stanley Dickerson, and Charles Sweat are the administrators of West Tennessee State Penitentiary as well as Derrick D. Schofield, at the time was the Tennessee Department of Corrections Commissioner and was responsible for the daily operation at West Tennessee State Penitentiary learned of the plaintiff Danny Ray Banks complaints and failed to remedy it, created or permitted policies and procedures that harmed the plaintiff, and acted with gross negligence in managing subordinates.

2. As to defendant Derrick D. Schofield, plaintiff alleges that Tennessee Department of Corrections Commissioner Derrick D. Schofield is legally responsible for the operations of all Tennessee State Prisons as well as the safety, health, and welfare of all inmates being housed under his care.
Defendant Derrick D. Schofield was fully aware of the conditions to which the plaintiff alleges he was forced to live under and posed a serious threat to the plaintiff's health and safety. Plaintiff alleges that on several different occasions he forwarded grievance complaints as well as several handwritten letters to the defendant making him aware of the living conditions he was being forced to live under.

3. As to defendants James M. Holloway, Robert Henry, Stanley Dickerson, and Charles Sweat, plaintiff alleges that Warden James M. Holloway, Associate Warden of Treatment Robert Henry, Associate Warden of Security Stanley Dickerson, and Chief of Security Charles Sweat, are in charge of the prison as a whole. As such each defendant oversees any making of policy and procedures as well as ensuring that officers are adequatly trained.

"There is a main link in the chain of command."
Each defendant knew that the plaintiff was being deprived of one(1) hour exercise and fresh air outside of his assigned cell five days per week and showed disregards to the health of the plaintiff.

4. As to defendants Anthony Ragland, Jeffrey Middleton, and William Bryant, plaintiff alleges that Unit Managers Anthony Ragland, Jeffrey Middleton, and William Bryant, are legally responsible for the daily operations of Building #3 as a whole where he was being housed and also for the welfare of all the inmates assigned to building #3.
Each defendant knew that the plaintiff was being deprived of one(1) hour exercise and fresh air outside of his assigned cell five days per week due to a procedure that was created by the defendants concerning recreation outside inmates assigned cells and showed disregards to the health of the plaintiff.
Plaintiff alleges that even after being cleared in having no involvement in what had taken place causing his pod to be placed on lockdown, and requesting to be reassigned to another building due to the plaintiff having health Problems from being confined to his cell 24 hours a day his requests and complaints were always ignored by the defendants.

5. As to defendant Evelyn Scallions, plaintiff alleges that Counselor Evelyn Scallions is responsible for the health, safety, and welfare of all inmates assigned to the pod # 3B where he was being housed.
The defendant knew that the plaintiff was being deprived of one(1) hour exercise and fresh air outside of his assigned cell five days per week while also being deprived of his liberty by disregarding the plaintiff's requests to be reassigned to another building and the plaintiff's Complaints of having health problems from being

Confined to his cell 24 hours a day.

6. Plaintiff alleges that each defendant had actual knowledge of the rights to which he was being deprived of while the defendants continued to be deliberately indifferent to those rights.

Plaintiff also alleges that each defendant all but Derrick DiSchofield made daily walk through rounds inside the pod he was assigned to and that the plaintiff would complain to the defendants repeatedly of him having physical health and mental health problems.

1. Defendants owed plaintiff a duty of reasonable care to be provided with the minimum amount of time for exercise.

2. Defendants breached that duty by depriving plaintiff of the minimum amount of time for exercise to maintain good health.

3. The breach of duty resulted in mental anguish, pain and suffering, fright and shock, embarrassment, humiliation, and Psychological injury.

4. The breach of duty proximately caused those damages.

5. The defendants did act in reckless disregards to the Plaintiff's rights to be provided with the minimum amount of time for exercise to maintain good physical and mental health.

6. The defendants did carry out lawful activities with unnecessary harshness, abused their official power, and took unfair advantage of the plaintiff.

7. Underlying the Eighth Amendment is a fundamental Premise that prisoners are not to be treated as less than human being's. Wrongful intent is not necessary element for eighth amendment violation in that if Physical or mental pain which results in cruel and unusual, there is violation of eighth amendment regardless of intent or purpose of those who inflict it.

8. The Eighth Amendment requires that prison officials, under the circumstances as I shall define them for you, must not be deliberately indifferent to a prisoners needs for out of cell exercise to maintain

good physical and mental health.

9. A failure of prison officials to act in such circumstances suggest that the officials actually want the prisoner to suffer the harm.

10. The constitutional prohibition against cruel and unusual Punishment not only prohibits certain kinds of physical Punishment, such as torture, but embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency.

11. If prison officials know that conditions are objectively cruel and fail to remedy them, they are deliberately indifferent.

12. Conditions that may be physically or mentally harmful, but serve a legitimate correctional purpose, such as restrictions in solitary confinement units, may not violate the eighth amendment however, it is unconstitutional to inflict serious psychological pain on inmates to serve minor (correctional) concerns, routine and automatic security concerns, or pragmatic interests of lesser significance.

13. Often, the lenght of time prisoners are subjected to an unpleasant condition plays a part in determining whether it is cruel and unusual.
But especially degrading or abusive conditions are unconstitutional even if imposed for short periods of time.

14. Prison officials can be found reckless or deliberately indifference if the officials knows of and disregards an excessive risk to inmate health or safety.

15. When prison officials subject inmates to serious Punishments like solitary confinement they must observe the safeguards of due process and equal Protection of the law.

16. Other things being equal, that the plaintiff will have thought that he himself, through control of his own behavior, could have avoided the deprivation, and thereby have believed that (in the absence of his misbehavior) the restraints fell outside the sentence imposed upon him.

17. Deliberate indifference can be shown by repeated examples of negligent acts which disclose a pattern of conduct, or by showing systematic or gross deficiencies in staffing, facilities, equipment or Procedures, regardless of prison officials motives.

18. The lack of entitlement to a particular privilege does not free prison administrators to grant or withhold the privilege for impermissible reasons.

19. The state must provide an inmate with a healthy, habitable environment. This includes providing inmates with the minimum amount of time for exercise served under conditions which do not present an immediate danger to the health and well being of the inmates.

20. A prison official may be found to have had a sufficiently culpable state of mind, so that conditions of confinement may constitute a violation of Inmate's Eighth Amendment right to be free from cruel and unusual punishment, If he participated directly in the alleged event or learned of the inmate's complaint and

failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates.

21. Comfort is a relative term, and that the Eighth Amendment does in fact protect against discomfort so severe as to cause needless human suffering, as determined by mankind's evolving standards of decency. Citing Patterson vs. Mintzes, 717 F.2d 284.

22. In this case, the grant of relief will serve the public interest because it is always in the public interest for Prison officials to obey the law. (Respect for law, particularly by officials responsible for the administration of the states correctional system, is in itself a matter of the highest public interest).
The constitution is the ultimate expression of the public interest. "The relief sought will serve the public interest."